[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage made returnable to the Danbury Superior Court. At the time it was tried, this case was more than two years old, having been made returnable to March 21, 2000.
During the pendency of this action, both the plaintiff and defendant had been represented by extremely competent counsel.
On February 26, 2002, the plaintiff filed a pro se appearance in lieu of his attorney who was excused from the case.
On May 13, 2002, the court (Frankel, J.) granted the motion of defendant's attorney for permission to withdraw as counsel of record.
The defendant filed her pro se appearance on July 5, 2002. Neither plaintiff nor defendant thereafter retained counsel to represent them in this matter.
The case was assigned for trial on January 29, 30 and 31, 2002.
On January 16, 2002, the court (Doherty, J.) granted a motion to continue the trial. It was reassigned for July 23 and 24, 2002.
On July 5, 2002, the defendant filed a motion to reschedule the trial, citing unavailability of counsel. The motion was denied by the court (Frankel, J.) on July 8, 2002, and the matter was assigned for firm trial on July 23, 2002.
On said date, both the plaintiff and defendant appeared for trial and each acted as their own counsel, pro se.
The court heard the evidence and testimony and reserved decision. Having considered the evidence and testimony, and having also taken into consideration the provisions of General Statutes §§ 46b-58, 46b-81, CT Page 11107 and 46b-82 and related statutes, the court makes the following findings of facts and orders.
The plaintiff and defendant were married at Hopewell Junction, New York, on May 15, 1988, and both have resided in Connecticut for at least twelve months prior to the commencement of this action.
The court has the requisite jurisdiction to proceed to judgment in this matter.
The court finds that the plaintiff has established each of the allegations in his complaint, including the allegation that the marriage of the parties has broken down irretrievably, without prospect of reconciliation.
The parties have one minor child, Richard Chad Frey, born November 22, 1994. No other minor children have been born to the defendant since the date of the marriage.
The parties entered into a stipulated agreement concerning custody, visitation, child support and other issues concerning the minor child, Richard.
By their agreement, the parties are to have joint legal custody of their minor son, Richard. Richard's primary residence shall be that of his mother, the defendant. His father, the plaintiff, shall have reasonable, liberal and flexible visitation as the parties shall agree upon.
The plaintiff shall maintain medical and dental insurance as it is available to him through his employment. The court orders that the plaintiff shall be solely responsible for the cost of such insurance while the child remains a minor. Any uninsured or unreimbursed necessary medical and dental expenses (excluding orthodontia) shall be shared by the parents in the proportion determined by the child support guidelines.
The plaintiff shall pay to the defendant the sum of $500 per week as unallocated child support and periodic alimony. That obligation shall continue for a period of ten (10) years from the date of this judgment, at which time it shall be reduced to one ($1) dollar per year modifiable upward only upon a showing by the defendant, by a preponderence of the evidence, that she is unable to maintain meaningful employment due to serious health issues. CT Page 11108
The occurrence of any one of the following events shall be a basis for a motion to terminate the aforementioned unallocated alimony and child support:
— The death of either party;
— Remarriage of the defendant;
— Cohabitation by the defendant as that term is defined by statute.
Any order terminating the unallocated alimony and child support entered while the child, Richard, is still a minor shall require a simultaneous order of the court establishing the child support obligation.
While the child remains a minor entitled to child support, the plaintiff shall maintain a policy of insurance on his own life for the exclusive benefit of the minor child. The plaintiff shall obtain the maximum benefit available at a cost of no less than $1000 per year.
The plaintiff is forty-five years old and enjoys generally good health. He has a college education and postgraduate degrees, including a doctorate in chiropractic medicine.
He owns his own practice and has maintained it for over fourteen years. By his own testimony, he enjoys an excellent reputation in his profession and has quite a number of "A List" patients, as he describes them, who consult and treat with him on a regular basis at commensurately high rates.
He testified that for most of his practice he treated and billed his clients in the conventional manner, that is, through the use of billing through various medical insurance programs. After the failure of several HMOs and after "Mrs. Clinton's" medical insurance programs, he found his accounts receivables and unpaid fees to be driving him out of business. In the late 1990s, he stopped all use of medical insurance and accepted payment in cash or credit card only.
According to his testimony, his annual gross income from his practice "plunged dramatically" to its current level of $82,160, or $1580 per week, as reported on his financial affidavit dated July 23, 2002. On that affidavit, he reported his net weekly income to be $1220, or $63,440 per year.
According to the only exhibit offered into evidence in this case (Plaintiff's Exhibit 1), the parties' joint 1998 1040 income tax return, CT Page 11109 the plaintiff reported gross receipts in that year of $54,137.
The defendant wife is forty-four years old and is trained in cosmetology. She is self-employed as a hairdresser, and her financial affidavit reports that her gross weekly income is $1200 and her net weekly income is $400. She attributes the large disparity to out-of-pocket expenses for costs associated with her hair salon. She testified that she has health problems relating to her neck and hand muscles and that an MRI disclosed the existence of an occluded disk which limits her ability to work longer hours as a hairdresser.
She has been the primary care giver to the parties' minor son during the pendency of this action.
She further testified she had sustained mental abuse by the husband during the marriage due in large part to her limited hours and income, despite the fact that he was aware of her health limitations.
The evidence and testimony offered by the two prose parties in this case is found to be somewhat less than credible. The testimony regarding a home with an appraised value of at least $400,000, valuable household contents and furnishings ($99,000 worth by the defendant's estimate), and various other portions of the testimony concerning motor vehicles and expensive vacations, permit the court to find that the true income and asset picture of the parties is not accurately reflected on their financial affidavits.
The court's orders are based on the limited and possibly inaccurate testimony of both parties. To the extent that either of them has fraudulently misrepresented the facts concerning their income and assets, any orders based on such facts may be opened and modified at any time under Connecticut case law.
The court finds that the plaintiff has several patents pending. They are the result of considerable time and investment by the plaintiff, however, they are marital assets. For that reason, the court orders that any future net income received by the plaintiff for patents which are pending at the time of this trial shall be divided between the parties — 70 percent to the plaintiff and 30 percent to the defendant.
The other major asset of the parties is their joint equity in the marital residence located at 2 Hewlett Road in New Fairfield, Connecticut. The parties stipulated that the approximate fair market value of that residence is $400,000. It was to a great extent built by the plaintiff for a cost of approximately $225,000 in 1987-1988. CT Page 11110
The plaintiff estimates the equity in that home to be approximately $205,000.
The defendant is currently residing in the marital residence with her son, Richard. It is the only home Richard has ever known. Both parties feel very strongly that the home should not be sold unless it becomes financially impossible to maintain it. That day is practically here considering the fact that the average monthly mortgage payment is $1650, the monthly portion of the real estate tax is $500, and there is currently an additional home equity loan in the approximate amount of $740 per month, for a grand total of $2,890 per month. The obligations on the house are all currently paid, which fact is another contributing factor to the court's concern about accuracy of the parties' finances which the financial affidavits report as a combined net weekly income of $1620.
The plaintiff stipulated and agreed to be solely responsible for the home equity loan in the amount of $75,000. As noted, that is a $740 per month debt secured by the marital residence.
Having considered the evidence and testimony and the applicable statutory provisions, the court enters the following orders:
As previously ordered, the plaintiff shall pay to the defendant unallocated alimony and child support in the amount of $500 per week for a period of ten (10) years.
The plaintiff shall be solely responsible for maintaining medical insurance for the benefit of the minor child. Any unreimbursed or uninsured necessary medical and dental expenses incurred for the minor child shall be shared by the parties in the proportion determined by the support guidelines.
The plaintiff shall be solely responsible for the $75,000 home equity loan to Bank One, and he shall hold the defendant harmless from that obligation.
The defendant shall have exclusive use of the marital residence located at 2 Hewlett Road, New Fairfield, Connecticut.
Until such time as the marital residence may be sold, the plaintiff shall be responsible for the first mortgage and shall hold the defendant harmless. CT Page 11111
The defendant shall be responsible for the insurance and real estate taxes as well as the cost of all utilities and minor repairs (under $1000) of said residence.
At the election of either party, the marital residence shall be listed for sale and both parties are ordered to cooperate in such sale. In no event shall the property be listed for sale later than November 22, 2012, the eighteenth birthday of the minor child, unless the parties stipulate in writing not to sell said premises.
Upon any sale of the property, the net proceeds of such sale shall be shared equally by the parties. The plaintiff shall be responsible to pay off any portion of the aforementioned $75,000 home equity loan which remains unpaid at the time of the sale of the residence from his portion of the net proceeds of said sale.
The furnishings and household contents of the marital residence shall be shared equally by the parties. Any disputes concerning personalty shall be referred to the Family Relations Office of the Superior Court.
Each of the parties shall retain their right, title and interest in and to their respective businesses and each shall hold the other harmless from debts arising from their business.
Except as otherwise provided herein, each of the parties shall retain the personal property, including motor vehicles, listed on their respective financial affidavits.
Except as otherwise provided herein, each party shall be solely responsible for the debts and liabilities appearing on their respective financial affidavits.
Having found that the marriage of the parties has broken down irretrievably, it is hereby ordered that the marriage of the parties is dissolved and they are single and unmarried. CT Page 11112